UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SCOTT DODSON, ANGELINE DODSON,
ROBERT DAVIS, CATHY DAVIS,
RAYMOND NEFF, and CARRIE NEFF, on
behalf of themselves and others similarly
situated,

       Plaintiffs,

v.                                                                                     Case No. 3:22-CV-4470

WESTERVELT ECOLOGICAL
SERVICES, LLC, and MUNROE FOREST
& WILDLIFE MANAGEMENT, INC.,

       Defendants,
_____/

MUNROE FOREST & WILDLIFE
MANAGEMENT, INC.,

       Third-Party Plaintiff,

v.

CHILDS LAND CLEARING, LLC,

       Third-Party Defendant.
_____/

## NOTICE OF REMOVAL

       To the Clerk of the United States District Court for the Northern District of Florida; to Plaintiffs, Scott Dodson, Angeline Dodson, Robert Davis, Cathy Davis, Raymond Neff, Carrie Neff, and their attorneys of record; to Defendant and Third-

1

Party Plaintiff, Munroe Forest & Wildlife Management, Inc. ("Munroe"), and its attorneys of record; and to Third-Party Defendant, Childs Land Clearing, LLC ("Childs"), and its attorneys of record:

**PLEASE TAKE NOTICE** that Defendant Westervelt Ecological Services, LLC ("Westervelt") hereby files this Notice of Removal on the grounds set forth below.

1. The state court civil action is removable to this Court, and this Court has subject matter jurisdiction over this civil action, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as well as 28 U.S.C. §§ 1441(a), and 1453, because this is a putative class action involving more than 100 putative class members, the aggregate amount in controversy, excluding interest and costs, exceeds $5,000,000, and there is minimal diversity.

**I.    PLEADINGS, PROCESS, AND PERTINENT MOTIONS**

2. On June 18, 2020, Plaintiffs Scott Dodson, Angeline Dodson, Robert Davis, Cathy Davis, Raymond Neff, and Carrie Neff filed this putative class action in the Circuit Court of the First Judicial Circuit in and for Santa Rosa County, Florida, Case No. 2020-CA-274 (the "Action"). *See generally* Class Action Complaint for Damages ("Complaint" or "Compl.").

3. The Complaint alleged that Westervelt and Munroe were grossly negligent in causing a controlled burn to spread beyond its intended area and onto

property owned by Plaintiffs and putative class members. Compl. ¶¶ 8-18, 28-41. It further alleged that Plaintiffs were seeking certification of the following class: "All Persons who, as of May 4, 2020, owned real or personal property that was damaged by the Five Mile Swamp Fire," excluding "Defendant[s], [their] parent, subsidiaries[,] affiliates, officers and directors; any Judge to who[m] this action is assigned; and any member of such Judge's staff or immediate family." *Id.* at ¶¶ 19a, 19b. Plaintiffs estimated that the "approximate number of class members consist [sic] of 14 residential property owners and an unknown number of property owners with agricultural or timber losses covering nearly 200 acres." *Id.* at ¶ 20. Plaintiffs sought relief for property damage, living expenses, and business interruption. *Id.* at ¶¶ 16-18. A Civil Cover Sheet accompanying the Complaint estimated the amount in controversy to be $1,000,000.

4. Westervelt was served with the Summons and Complaint on June 25, 2020.

5. On November 5, 2020, Munroe filed a Third-Party Complaint against Childs for contractual and common law indemnification and for breach of contract.

6. On February 26, 2021, Plaintiffs filed an Amended Complaint, which is the operative pleading in this case. ("Amended Complaint" or "Am. Compl."). The Amended Complaint generally made the same factual allegations as the Complaint, but amended the causes of action to remove the counts for gross

negligence and add claims for common law negligence, violations of Fla. Stat. § 590.13, negligence per se, and res ipsa loquitor. Am. Compl. ¶¶ 28-68. The Amended Complaint also amended Plaintiffs' proposed class definition to, "All persons or entities who, as of May 4, 2020, owned real property in Santa Rosa County, Florida[,] identified by the following parcel numbers," which were listed in the Amended Complaint. *Id.* at ¶ 19a. The amended proposed class definition excluded the same persons and entities as the original Complaint, but also excluded "entities currently in bankruptcy; entities whose obligations have been discharged in bankruptcy; and governmental entities[.]" *Id.* at ¶ 19b. The Amended Complaint alleged that, "[t[he approximate number of class members consists of at least forty owners of real property located in Santa Rosa County, Florida." *Id.* at ¶ 20. The Amended Complaint did not identify or allege an amount in controversy.

7. On March 23, 2021, Munroe amended its Third-Party Complaint against Childs to include a count for contribution pursuant to Fla. Stat. § 768.31, et seq.

8. On September 10, 2021, Plaintiffs filed a Motion for Class Certification as to Liability of Defendants ("Class Cert. Motion") based on the putative class definition contained in the Amended Complaint. Class Cert. Motion ¶¶ 2-3.

9. On February 23, 2022, Plaintiffs filed a Memorandum of Law in

4

Support of Plaintiffs' Motion for Class Certification as to Liability ("Class Certification Brief."). The Class Certification Brief contained an affidavit and exhibit identifying for the first time the owners of the parcels identified in the Plaintiffs' proposed class definition. Class Certification Brief, Affidavit of Tom Fruitticher, ¶¶ 4-9, and Exhibit A-3 ("Exhibit A-3"). Although it is difficult to ascertain the precise number of owners identified, Exhibit A-3 appears to identify approximately 325 property owners, with some parcels being owned by more than one person or entity, and some property owners owning several of the enumerated parcels. *Id.* The Class Certification Brief did not identify or allege an amount in controversy.

10.   On March 9, 2022, Plaintiffs filed an Amended Motion for Class Certification as to Liability ("Amended Motion") in which they purported to change the proposed class definition to include "[a]ll persons or entities who, as of May 4, 2020, owned real property in Santa Rosa County, Florida[,] identified by the following parcel numbers," which were listed in the Amended Motion, and excluding "Defendants, their parents, subsidiaries, affiliates, officers and directors; any Judge to whom this action is assigned; any member of such Judge's staff or immediate family; entities currently in bankruptcy; entities whose obligations have been discharged in bankruptcy; and governmental entities; *and any entities or*

*individuals who have claims against Defendants based on subrogation rights.*" Am. Motion ¶¶ 4, 5 (emphases added).

## II. CITIZENSHIP OF THE PARTIES

### A. Citizenship of Plaintiffs

11. As alleged in the Amended Complaint, all Plaintiffs live at and own property in Santa Rosa County, Florida. Am. Compl. ¶ 5. All Plaintiffs are citizens of Florida.

### B. Citizenship of Defendants and Third-Party Defendant

12. Westervelt is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Alabama. Its sole member is The Westervelt Company, Inc., a Delaware corporation with its principal place of business in Alabama. Westervelt is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Florida. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen.").

13. Munroe is a Florida corporation with its principal place of business in Florida.

14. Childs is a Florida limited liability company with its principal place of business in Florida.

## III.     THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA

15.    Plaintiffs' operative pleading indicates that they filed this civil action on behalf of themselves and "[a]ll persons or entities who, as of May 4, 2020, owned real property in Santa Rosa County, Florida[,] identified by the following parcel numbers," which were listed in the Amended Complaint, and excluding "Defendants, their parents, subsidiaries, affiliates, officers and directors; any Judge to whom this action is assigned; any member of such Judge's staff or immediate family; entities currently in bankruptcy; entities whose obligations have been discharged in bankruptcy; and governmental entities." Am. Compl. ¶¶ 19a, 19b.[1]

16.    The gravamen of the Amended Complaint is that Westervelt hired Munroe to conduct a controlled burn on 243 acres of Westervelt's property (the "Property"); that the Property was unusually dry at the time of the controlled burn; that Defendants used inadequate firefighting equipment; and that, as a result, the fire grew out of control, causing damage to "homes, structures, agriculture, timber, and

---

[1] Plaintiffs' purported amendment to the proposed class definition is a nullity. *See supra* ¶ 10. Florida Rule of Civil Procedure 1.220(c)(2)(D)(ii) ties the "definition of the alleged class" to the Class Representation Allegations contained in the operative pleading. Therefore, under Florida law, Plaintiffs were required to amend their complaint in order to amend their proposed class definition, and their Amended Motion had no effect on that proposed class definition. *See also Coughlin v. Sears Holdings Corp.*, No. SACV 08-00015, 2010 WL 4403089, at *2 (C.D. Cal. Oct. 26, 2010) ("Once [plaintiff] decided to change the definition of the proposed class that she would seek certification for, she should have sought leave from this Court to file a Third Amended Complaint that contained a precise definition for her new proposed class."). Regardless of whether Plaintiffs' Amended Motion effected an amendment to the proposed class definition, however, removal is proper under CAFA for the same reasons it is proper under the proposed definition contained in the Amended Complaint.

7

personal property," including the destruction of Plaintiffs' homes, as well as "additional living expenses and business interruption" to Plaintiffs. *Id.* at ¶¶ 8-18.

17.  CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants. Toward that end, CAFA expands federal jurisdiction over class actions, and expressly provides that class actions filed in state court are removable to federal court where: (a) the putative class contains at least 100 class members; (b) any member of the putative class is a citizen of a State different from that of any defendant; and (c) the aggregate amount in controversy for the putative class exceeds $5,000,000, exclusive of interest and costs.[2] 28 U.S.C. § 1332(d); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193-94 (11th Cir. 2007).

### A.  The Putative Class Exceeds 100 Members

18.  CAFA requires that the class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5)(B). That requirement is readily met here.

19.  Plaintiffs describe the class as consisting of "[a]ll persons or entities who, as of May 4, 2020, owned real property in Santa Rosa County, Florida[,] identified by the following parcel numbers," which were listed in the Amended Complaint, and excluding "Defendants, their parents, subsidiaries, affiliates, officers

---

[2] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or is entitled to damages in any amount.

and directors; any Judge to whom this action is assigned; any member of such Judge's staff or immediate family; entities currently in bankruptcy; entities whose obligations have been discharged in bankruptcy; and governmental entities." Am. Compl. ¶¶ 19a, 19b. Plaintiffs purport to identify approximately 325 property owners in Exhibit A-3 of their Class Certification Brief that was filed on February 23, 2022. *See supra* ¶ 9.

20. As established by Plaintiffs' allegations, theories, and definition of the putative class, along with Exhibit A-3 that was first provided to Defendants on February 23, 2022, the putative class readily exceeds 100 persons. Thus, the requirement of 28 U.S.C. § 1332(d)(5)(B) is satisfied.[3]

**B.  Minimal Diversity Exists**

21. The second CAFA requirement is minimal diversity – at least one putative class member and at least one defendant must be citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

22. Here, at least six putative class members—specifically, the Plaintiffs—are citizens of the State of Florida. Am. Compl. ¶ 5; *supra* ¶ 11. On the other hand, Defendant Westervelt is alleged to be a "foreign for-profit corporation " and is, in

---

[3] Even if this Court were to assume that class definition proposed by Plaintiffs' Amended Motion was controlling, *see supra* note 1, there is no reason to think that excluding 13 parcels and any subrogation claimants from the class would decrease the number of putative class members to below 100 persons.

fact, a Delaware limited liability company with its principal place of business in Alabama, consisting of a single member that is a Delaware corporation with its principal place of business in Alabama. Am. Compl. ¶ 6; *supra* ¶ 12. Thus, the minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

23. Based upon parcel owner information provided in Exhibit A-3 of the Class Certification Brief that was filed on February 23, 2022, minimal diversity also exists under 28 U.S.C. § 1332(d)(2)(B) because at least one member of the proposed class of plaintiffs is a "citizen or subject of a foreign state."

### C. The CAFA Amount in Controversy Is Satisfied

24. CAFA requires that the aggregate amount in controversy exceed $5,000,000 for the entire putative class, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2); 1332(d)(6).

25. A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). *See also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014). Further, "at the jurisdictional stage, 'the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'" *Dudley*, 778 F.3d at 913 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010)). As discussed below, Plaintiffs' allegations and prayer for relief have

likely put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members, who were first identified in Exhibit A-3 that was provided to Defendants on February 23, 2022, as set forth in 28 U.S.C. § 1332(d)(6).

26.  With the possible exception of the Civil Cover Sheet attached to Plaintiffs' initial, non-operative Complaint, Plaintiffs have not made a specific damages demand. The Civil Cover Sheet indicated that the amount in controversy was $1,000,000. At that time, however, Plaintiffs indicated that the proposed class consisted of only "14 residential property owners and an unknown number of property owners with agricultural or timber losses covering nearly 200 acres." Compl. ¶ 20. Plaintiffs now seek certification of class consisting of approximately 325 property owners across 335 parcels of property covering approximately 2,215 acres. Am. Compl. ¶ 19a; Class Certification Brief 4, 12, Exhibit A-3. To the extent the amount indicated on the Civil Cover Sheet constituted a damages demand for the initial proposed class in the initial Complaint, it cannot be presumed to apply—and does not apply—in light of Plaintiffs' more recent and more expansive allegations and representations.  While the original Complaint sought certification of a class consisting of "property owners with agricultural or timber losses covering nearly 200 acres" (Comp. ¶ 20) and the related Civil Cover Sheet indicated that the associated amount in controversy was $1,000,000, Plaintiffs' Class Certification

Brief, which was served on February 23, 2022, seeks certification of property owners of approximately 2,215 acres – more than ten times the acreage identified in the original Complaint. The ten-fold increase in the acreage at issue would have a related increase in the amount in controversy.

27. Although Plaintiffs do not specify a damages amount, courts are permitted to use their "judicial experience and common sense" when assessing the amount in controversy. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). They may also "make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Id.* at 1061-62. And they "need not 'suspend reality or shelve common sense'" when deciding if the complaint shows the amount in controversy requirement is met. *Id.* at 1062.

28. Based on Plaintiffs' allegations and representations, including those contained in the Class Certification Brief that was served on February 23, 2022, the amount in controversy in this case plainly exceeds $5,000,000. Each cause of action alleges that "Plaintiffs *and Class members*" across 335 parcels of land and 2,215 acres, "suffered damages to their real and personal property." Am. Compl. at ¶¶ 34, 41, 44, 50, 53, 59, 62, 68 (emphasis added); Class Certification Brief 4. The members of the putative class number in the hundreds, *see* Exhibit A-3, and Plaintiffs allege that the fire inflicted damage to their "homes, structures, agriculture, timber, and

personal property." Am Compl. ¶ 16. Plaintiffs further allege that their own homes were "destroyed" by the fire at issue, and they claim that they incurred additional damages for new living expenses and business interruption. *Id.* at ¶ 17-18. Under these circumstances, Westervelt's allegation that the amount in controversy exceeds $5,000,000 is certainly plausible. *See Dart Cherokee*, 574 U.S. at 88.

29. For the foregoing reasons, the $5,000,000 CAFA amount in controversy requirement is satisfied here. *See* 28 U.S.C. §§ 1332(d)(2); 1332(d)(6).

## IV. <u>TIMELINESS OF REMOVAL</u>

30. Westervelt's removal of this putative class action is timely.

31. 28 U.S.C. § 1446(b) "specifies two time periods within which a defendant must remove a class action that satisfies CAFA's jurisdictional requirements from state court to federal court." *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 69 (1st Cir. 2014). "If the case as stated by the initial pleading is removable, Section 1446(b)(1) requires the defendant to remove within thirty days of its receipt." *Id.* "Section 1446(b)(3) requires the defendant to remove with thirty days of receiving a subsequent paper from which it may first be ascertained that the class action is or has become removable." *Id.* Additionally, class actions such as this one are not subject 28 U.S.C. § 1446(c)(1)'s 1-year limitation on removal. 28 U.S.C. § 1453(b). *See also* 28 U.S.C. § 1332(d)(1)(B) (defining "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State

13

statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action").

32.  Plaintiffs did not trigger the first 30-day timeline set out by § 1446(b)(1), because the initial Complaint was not removable. The pleading itself did not state an amount in controversy, and it acknowledged that the number of class members was "unknown." Compl. ¶ 20. The Complaint's Civil Cover Sheet stated an amount in controversy of $1,000,000, below the CAFA threshold. *See* 28 U.S.C. §§ 1332(d)(2); 1332(d)(6).

33.  On February 23, 2022, Plaintiffs triggered the second 30-day timeline—the one set out by § 1446(b)(3) – when they filed their Class Certification Brief. The Class Certification Brief was the first "paper" filed in this Action from which Westervelt could "ascertain[]" that the number of putative class members exceeds 100. *See* 28 U.S.C. § 1446(b)(3); Class Certification Brief at Ex. A-3. Prior to the filing of the Class Certification Brief, Westervelt had not received any "amended pleading, motion, order, or other paper" indicating that the Plaintiffs' proposed class exceeded 100 members. Westervelt timely removed this civil action within 30 days of receipt of the Class Certification Brief.

34.  "[I]n determining whether the thirty-day removal period [under § 1446(b)(3)] has been triggered," courts apply the "bright-line approach," which "require[s] that the relevant document set forth a sufficiently detailed and

unequivocal statement from which the defendant may unambiguously ascertain that the CAFA jurisdictional requirements have been satisfied." *Gibson v. Clean Harbors Envt'l Servs., Inc.*, 840 F.3d 515, 520 (8th Cir. 2016) (citing *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016); *Romulus*, 770 F.3d at 75; *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 145 (2d Cir. 2014); *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013)). *See also Clark v. Umum Life Ins. Co. of Am.*, 95 F. Supp. 3d 1335, 1354 (M.D. Fla. 2015) (applying "bright-line rule under which a court may look only at the pleading or any post-litigation 'other paper' from the plaintiff to decide the triggering of the 30-day removal period" and recognizing that a defendant has no duty to investigate or supply facts outside those provided by the plaintiff); *Knox v. Am. Prof'l Assocs., LLC*, No. 1:19-CV-04890, 2020 WL 6930447, at *4 (N.D. Ga. May 27, 2020) (applying same rules). "Assessing the timeliness of removal should not involve a fact-intensive inquiry about what the defendant subjectively knew or should have discovered through independent investigation." *Walker*, 727 F.3d at 825. Instead, "in assessing the timeliness of the removal, [courts] must consider the document received by the defendant from the plaintiff—be it the initial complaint or a later received 'other paper,'—and determine whether that document unambiguously establishes federal jurisdiction." *Knox*, 2020 WL 6930447, at *4.

35. Alternatively, "[d]efendants are permitted to remove outside of [the two

30-day] periods when the time limits of 28 U.S.C. § 1446(b) are not triggered." *Cutrone*, 749 F.3d at 1147. *See also Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines."); *Grow v. Transamerica Life Ins. Co.*, Nos. 1:19-CV-00630, 02-CV-2018-902419, 2020 WL 1646190, at *11-12 (S.D. Ala. Mar. 6, 2020) (holding that where "'initial pleadings or other document[s] . . . . fail to trigger the removal periods . . a defendant may remove a case when, upon its own investigation, it determines that the case is removable" (quoting *Cutrone*, 749 F.3d at 148)).

36. For these reasons, Westervelt's removal is timely.

## V. **ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

37. Venue is proper in this district under 28 U.S.C. § 1446(a) because this district and division embrace the place in which the removed action has been pending.

38. Along with this notice, Westervelt is providing this Court with a copy of all process, pleadings, and orders served upon Westervelt in this Action. *See* 28 U.S.C. § 1446(a).

39. "Promptly after filing [this] notice of removal," Westervelt will "give written notice thereof to all adverse parties and . . . file a copy of the notice with the

clerk of" the First Judicial Circuit in and for Santa Rosa County, Florida. 28 U.S.C. § 1446(d).

## VI. **CONCLUSION**

40. For all the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. §§ 1332(d), 1441(a), and 1453.

41. In the event that any questions should arise with regard to the propriety of the removal of this Action, Westervelt respectfully requests the opportunity to present a brief and oral argument in support of its positions expressed herein.

**WHEREFORE**, Westervelt hereby gives notice that all further proceedings in this matter shall take place in the United States District Court for the Northern District of Florida, Pensacola Division, unless and until held otherwise by that Court.

Dated: March 22, 2022.

        Respectfully submitted,

        /s/ *Fred P. White, III*
        Fred P. White, III, Esquire
        Florida Bar No. 97359
        **BAUMANN, GANT & KEELEY, P.A.**
        1200 Riverplace Blvd., Suite 620
        Jacksonville, Florida 32207
        Phone: (904) 619-7129
        Facsimile: (904) 374-8964
        fwhite@baumannlegal.com
        mlewis@baumannlegal.com
        *Attorneys for Defendant, Westervelt Ecological Services, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify I served on this the 22nd day of March 2022, the foregoing on all counsel of record via U.S. mail and email at the following addresses:

J. Phillip Warren, Esquire
Keith W. Weidner, Esquire
Brian D. Hancock, Esquire
TAYLOR, WARREN, WEIDNER & HANCOCK, P.A.
1700 West Main Street, Suite 100
Pensacola, Florida 32502
pwarren@twwlawfirm.com
kweidner@twwlawfirm.com
bhancock@twwlawfirm.com
josier@twwlawfirm.com
*Attorneys for Plaintiffs*

G. Randall Spear, Esquire
SPEAR, SPEAR & HAMBY, P.C.
Post Office Box 1347
Mobile, Alabama 3663-1347
Phone: (251) 344-8181
grs@sshlawpc.com
sara@sshlawpc.com
*Attorney for Third-Party Defendant, Childs Land Clearing, LLC*

Daniel J. Santaniello, Esquire
Sean J. Fisher, Esquire
LUKS, SANTANIELLO, PETRILLO & COHEN
6265 Old Water Oak Road, Suite 201
Tallahassee, Florida 32312
sfisher@insurancedefense.net
djs@insurancedefense.net
kschroeder@insurancedefense.net
mdriver@insurancedefense.net
Lukstally-pleadings@ls-law.com
*Attorneys for Defendant and Third-Party Plaintiff, Munroe Forest & Wildlife Management, Inc.*

                                                  /s/ Fred P. White, III
                                                          Attorney